## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## AT OWENSBORO

TREVAR WARREN,                          )
on Behalf of Himself and All            )
Others Similarly-Situated,              )
                                        )
    *Plaintiff*,    )    **PROPOSED COLLECTIVE ACTION**
                                        )    **UNDER FLSA AND CLASS ACTION**
                                        )    **UNDER KWHA**
                                        )
                                        )    CASE NO.   4:20-CV-58-JHM
v.                                      )
                                        )
RHINO RESOURCE PARTNERS, LP and  )
PENNYRILE ENERGY LLC                    )    **JURY DEMANDED**
                                        )
    *Defendants*.   )
                                        )

## COMPLAINT

Plaintiff Trevar Warren, by and through counsel, on behalf of himself and all others similarly-situated, as both a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") and a class action under the Kentucky Wages and Hours Act ("KWHA"), for his Complaint against Defendants Pennyrile Energy LLC and Rhino Resource Partners L.P., states as follows:

### Summary of the Action

1.    Defendant Rhino Resource Partners, L.P. ("Rhino") is the parent entity that owns essentially all of, and controls, its subsidiary Defendant Pennyrile Energy LLC ("Pennyrile"). Rhino and Pennyrile have, as joint employers, in the last five years employed miners to work in an underground coal mine in the Commonwealth of Kentucky.

2.    Defendants systematically and willfully failed to comply with the requirements of the FLSA and KWHA by requiring Plaintiff and other miners to report to work prior to the

scheduled beginning of their shift, but not paying workers until the scheduled beginning of the shift.

3.        These illegal practices by Defendants were systematically applied by Defendants to workers, in violation of the FLSA and Kentucky law, including the KWHA.  Defendants should pay the wages illegally withheld from their employees.

**JURISDICTION AND VENUE**

4.        This Court has jurisdiction over the claims of Plaintiff and those similarly-situated pursuant to 28 U.S.C. §§ 1331 and 1337 and 29 U.S.C. § 216(b).

5.        This Court has and should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims under the KWHA because they are so related to Plaintiff's claims under the FLSA that they form part of the same case or controversy and arise from the same set of operative facts as Plaintiff's claims under the FLSA.

6.        Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants conduct business within the District and employed Plaintiff and the other employees who worked in Defendants' mine within the District of this Court and, specifically, in McLean County, Kentucky.

**PARTIES**

7.        Plaintiff Trevar Warren is a resident of Hopkins County, Kentucky.

8.        Defendant Pennyrile Energy, LLC is a for-profit limited liability company organized under the laws of the state of Delaware, with its stated-by-Defendant principal place of business being  located at 424 Lewis Hargett Circle, Suite 250, Lexington, Kentucky 40502; upon information and belief Defendant Pennyrile Energy LLC may be served by service of process on

its registered agent for service of process in the Commonwealth of Kentucky at Corporation Service Company, 421 West Main Street, Frankfort, Kentucky 40601.

9.      Defendant Rhino Resource Partners, L.P. is a for-profit limited partnership organized under the laws of the state of Delaware, with its stated-by-Defendant principal place of business being located at 424 Lewis Hargett Circle, Suite 250, Lexington, Kentucky 40502; upon information and belief Defendant Rhino Resource Partners, L.P. may be served by service of process on its registered agent for service of process in the Commonwealth of Kentucky at Corporation Service Company, 421 West Main Street, Frankfort, Kentucky 40601.

10.     Plaintiff was nominally employed by Pennyrile.

11.     Along with being employed by Pennyrile, which was Plaintiff's nominal employer, Plaintiff was also jointly employed by Rhino, including as described in more detail below.

12.     Upon information and belief, Pennyrile is a wholly-owned subsidiary of Rhino and employs its employees in accordance with policies that are uniformly established and directed by Rhino, including as described in more detail below.

13.     Upon information and belief, Rhino exerted and exerts supervisory control over all employees (including Plaintiff) of Pennyrile, and was and is involved in the daily operations of the business of Pennyrile as it pertains to the employment of all such employees, including as described in more detail below.

14.     In the five years preceding the filing of the initial Complaint in this action (and also in the last three years preceding this Amended Complaint), Defendants have employed in Pennyrile's mine in non-exempt[1] positions Plaintiff and many other similarly-situated current and former employees.

---

[1]      As used herein, "non-exempt" means that the employees in question worked in positions that were not exempt from the protections of the Fair Labor Standards Act and the Kentucky Wages and Hours Act, and that therefore,

15.    Each Defendants' annual sales have at all times relevant to this Complaint exceeded $500,000.00.

16.    Each Defendant is an enterprise engaged in commerce or in the goods for commerce, or in the production of goods for commerce, as defined in 29 U.S.C. § 203.

## FACTUAL ALLEGATIONS

### Defendants Require "Off-The-Clock" Work Prior To Scheduled Shifts

17.    Plaintiff was regularly scheduled to work shifts at Pennyrile's coal mine.

18.    Defendants directed workers, including Plaintiff, to arrive at the mines early enough to "dress out" and be "dressed and ready" fifteen minutes prior to the beginning of their scheduled shifts.  Certain employees, including Plaintiff, were directed to come even earlier: one hour before the beginning of their scheduled shift.

19.    However, Defendants never paid Plaintiff for the time between when they were required to arrive and the scheduled beginning of his shift.

20.    Instead, Defendants only began paying Plaintiff for their work at the scheduled beginning of their shifts.

21.    Because Defendants required Plaintiff to be present at their facility for Defendants' convenience to be ready to work at Defendants' request, Plaintiff was, at the very least, "engaged to wait" during that time and therefore should have been compensated for those fifteen minutes as compensable work, even if Plaintiff did absolutely nothing during that time.

22.    However, during the time that Plaintiff was required to be present at the Pennyrile's Mine prior to the scheduled beginning of his shift, Plaintiff performed a variety of activities that constituted compensable work, including the following:

---

entitled the workers working in those positions to be paid overtime compensation in accordance with those acts for work performed in excess of forty hours per week.

(a)    "Donning" specialized protective equipment required for the dangerous environment of an underground coal mine, including boots, helmet, gloves, and clothing issued by the Defendants.

(b)    Gathering tools to be used during Plaintiff's scheduled shift; and

(c)    Gathering materials to be used during Plaintiff's scheduled shift.

23.    At all times, Defendants were aware that they were required to pay employees for the time spent dressing out, for the they reported to work as instructed prior to the scheduled beginning of the shift, and indeed, from the first moment each employee began performing work.

24.    At all times, Defendants were aware that employees were in fact reporting to work prior to the scheduled beginning of the shift and were performing work prior to the scheduled beginning of their shifts, including "dressing out" and performing other work preceding the beginning of their shifts.

25.    Upon information and belief, Defendants have numerous cameras in the above-ground section of each of the Mines that captured and stored video images of employees arriving at each mine prior to the scheduled beginning of their shift and performing work (or, at the very least, being present and prepared to perform work at Defendants' request) prior to the scheduled beginning of their shift.

26.    Upon information and belief, the video footage is of sufficient quality to allow the viewer to recognize individual employees and determine when each individual employee arrived and began performing work.

27.    Defendants should maintain all video footage that Defendants have of workers at Pennyrile's mine prior to the scheduled beginning of their shifts so that the jury may determine whether the allegations in this Complaint are supported by that video footage.

**Rhino was a Joint Employer with Pennyrile.**

28.    Upon information and belief, Rhino controlled and directed the employment practices, including the illegal pay practices, of Pennyrile by directing Pennyrile to follow the uniform pay practices of Rhino of not paying workers for all time worked in order to keep labor costs down, which Rhino applied to all of Rhino subsidiaries' employees.

29.    For example, upon information and belief, Rhino directed another of its subsidiaries, CAM Mining LLC, which operates a coal mine in Pike County, Kentucky, to stop paying employees when the employees stopped working at the "face" of the mine underground, even though, after such time, the employees would (A) have to wait for a transport vehicle, (B) would have to ride in the transport vehicle as long as forty-five minutes underground to reach the surface, (C) would have to take off and store their protective equipment and (D) would have to ensure that their gear was ready for the next shift, such as by placing lights on chargers so that the batteries would be charged; the CAM Mining, LLC employees were not paid for any of this time, as directed by Rhino.

30.    Upon information and belief, Rhino directed Pennyrile and other Rhino subsidiaries operating coal mines to install a uniform time-keeping system that recorded information in a centralized system containing information relating to the employees of Pennyrile and other Rhino subsidiaries operating coal mines; Rhino directed that its subsidiaries, including Pennyrile, use this system under the control of Rhino to pay employees.

31.    Upon information and belief, Rhino regularly directed Pennyrile to hire and fire employees, and otherwise performed Human Resource functions (including discipline) with respect to the employees of Pennyrile.  In the alternative, Rhino on occasion directed Pennyrile to hire and fire employees, and otherwise performed Human Resource functions (including

discipline) with respect to the employees of Pennyrile.  In the second alternative, Rhino retained the authority to hire and fire employees of Pennyrile and to otherwise perform Human Resource functions (including discipline), and forced Pennyrile to acknowledge such authority, even if it was not exercised.

32.    Upon information and belief, in addition to exercising authority to hire, fire, discipline, and otherwise exercise control, including payroll, scheduling and human-resources-related control over employees of Pennyrile, including as discussed above, Rhino also exercised control over the pay rates and insurance benefits provided by Pennyrile to its nominal employees.

33.    Further, upon information and belief, in addition to supervising employees' hiring, firing, pay, and insurance, Rhino also supervised the actual work performed by the nominal employees of Pennyrile; for instance, Pennyrile would receive directions from Rhino regarding how its workers should perform mining operations, in what direction workers should mine for coal, etc.

34.    Upon information and belief, Rhino expressly supervised and controlled the Pennyrile's requirement that Plaintiff and others similarly-situated must come to work early prior to the scheduled shift beginning and that Pennyrile not pay Plaintiff and the other workers for this work but instead only pay Plaintiff and the other workers from the time of the scheduled beginning of their shift.

35.    Further, upon information and belief, despite the employees being nominal employees of Pennyrile, Rhino maintained the employment records for Plaintiff and those similarly situated, including (A) payroll records showing amounts paid, (B) time records showing times employees were credited by the Defendants with having worked and (C) the "second set of books" regarding the amount of time worked: the "tracker" data showing when employees were

present and performing work, but not being paid (all coal mines are required by federal law to equip miners with tracking devices capable of tracking the location of miners on the coal mine's aboveground and below-ground premises, and Pennyrile's employees had tracking devices which showed that they were present and working (but not being paid) prior to the scheduled beginning of their shift).

36.    Upon information and belief, Rhino shared common management with Pennyrile.

37.    Rhino acts directly and indirectly in the interest of an employer in relation to the employees of Pennyrile, including Plaintiff and those similarly situated, receiving the benefit of the work of the employees despite the work being nominally labelled as having been performed for Pennyrile.

38.    Rhino's directions to Pennyrile to engage in the violations described herein were not mere suggestions or recommendations, but were mandatory directions with which Pennyrile was required to comply, and with which Pennyrile therefore did comply.

39.    Stated another way, the decision of Pennyrile to engage in the practices of requiring employees to come in and be "dressed and ready" prior to the scheduled beginning of their shift was not discretionary on the part of Pennyrile, it was mandated by Rhino.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

40.    Plaintiff brings this action under the FLSA on behalf of himself and all similarly-situated current and former employees of Pennyrile who worked for Pennyrile and were not fully-paid for their overtime work which should have paid within the last three years.

41.    Stated another way, Plaintiff seeks to bring this action as a collective action under the FLSA on behalf of the following persons:

> all current and former employees of Pennyrile Energy LLC who were not fully-paid since April 10, 2017 for all overtime compensation due for such employee's work in one or more workweeks because the employer did not pay the employee

for reporting to work as requested by Defendants to be available to work prior to scheduled shifts.

42.     The employment policies, practices and agreements of Defendants raise questions of fact common to the proposed collective group including:

a.  whether Defendant has engaged in a pattern or practice of permitting or requiring Plaintiff and members of the proposed collective group to work in excess of forty hours per workweek for the benefit of Defendants and without appropriate compensation, in violation of the FLSA;

b.  whether Defendants have engaged in a pattern or practice of failing to keep accurate records showing all hours worked by Plaintiff and members of the proposed collective group, in violation of the FLSA;

c.  whether the conduct of Defendants was willful;

d.  whether Plaintiff and members of the proposed collective group are entitled to lost wages, liquidated damages and the other relief requested.

43.     The claims of Plaintiff are similar to those of the members of the proposed collective group, in that Plaintiff has been subject to the same conduct as members of the proposed collective group and Plaintiff's claims are based on the same legal theory as members of the collective group.

44.     Plaintiff's FLSA claims are maintainable as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

45.     Plaintiff Trevar Warren's consent to join this action is attached hereto as Exhibit 1.

## CLASS ACTION ALLEGATIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23 RELATING TO DEFENDANTS' VIOLATION OF THE KWHA

46.    Plaintiff brings this action under the KWHA on behalf of themselves and all similarly-situated current and former employees of Defendants who worked for Defendants and were not fully-paid for their overtime work for which for Defendants which Defendants should have paid within the last five years.

47.    Stated another way, Plaintiff seeks to bring this action as a class action under the KWHA on behalf of the following persons:

> all current and former employees of Pennyrile Energy LLC who were not fully-paid since April 10, 2015 for all overtime compensation due for such employee's work in one or more workweeks because the employer did not pay the employee for reporting to work as requested by Defendants to be available to work prior to scheduled shifts.

48.    Plaintiff is a member of the class he seeks to represent.

49.    Defendants failed to pay Plaintiff and the members of the class he seeks to represent wages for work performed, as described herein, in violation of Kentucky law, including the Kentucky Wages and Hours Act.

50.    Under Kentucky law, employers are required to compensate employees for all of the time that those employees spend working, and for all overtime compensation earned by such employees.

51.    Accordingly, Defendants' refusal to pay Plaintiff and the similarly-situated employees for all of the hours that Plaintiff and such workers actually worked and Defendants' refusal to pay the full overtime compensation earned by Plaintiff and the similarly-situated employees violated Kentucky law.

52.    The Rule 23 class is sufficiently numerous that joinder of all members is impractical, satisfying Federal Rule of Civil Procedure 23(a)(1).

53.    All members of the Rule 23 Class share the same pivotal questions of law and fact, thereby satisfying Federal Rule of Civil Procedure 23(a)(2).  Namely, all members of the Rule 23 class share the questions of (1) whether Defendants paid them for all time worked; and (2) whether Defendants' failed to pay them the full amount of overtime compensation earned.

54.    The claims of Plaintiff are typical of the claims of the Rule 23 Class, thus satisfying Federal Rule of Civil Procedure 23(a)(3).  Defendants' failure to pay Plaintiff for all hours worked was not the result of any circumstances specific to the Plaintiff.  Rather, it arose from Defendants' common pay policies, which Defendants applied generally to their employees.

55.    Plaintiff will fairly and adequately represent and protect the interests of the Rule 23 Class.

56.    Further, Plaintiff has retained competent counsel experienced in representing classes of employees against their employers related to their employers' failure to pay them properly under the law, thus satisfying Federal Rule of Civil Procedure 23(a)(4).

57.    By failing to pay Plaintiff and similarly-situated employees for all hours worked, and failing to pay employees the full amount of overtime compensation earned, Defendants have created the circumstance under which questions of law and fact common to the Rule 23 Class Members predominate over any questions affecting only individual members. Thus, a class action is superior to other available methods for fair and efficient adjudication of this matter. Accordingly, Plaintiff should be permitted to pursue the claims herein as a class action, pursuant to Federal Rule of Civil Procedure 23(b)(3).

## COUNT I – VIOLATION OF FLSA – NONPAYMENT OF OVERTIME COMPENSATION

58.    Plaintiff incorporates by reference all preceding paragraphs as if the same were set forth again fully at this point.

59.    Defendants have willfully violated the FLSA by engaging in a pattern or practice (or patterns or practices) of:

      a.    failing to keep accurate records showing all the time it permitted and/or required Plaintiff and members of the proposed collective action to work, from the first compensable act to the last compensable act, which has resulted in the denial of compensation at an overtime rate as required by the FLSA, for all time worked in excess of forty hours in a work week; and

      b.    permitting and/or requiring Plaintiff and members of the proposed collective action to perform integral and indispensable activities (work) in excess of forty hours in a work week, for the benefit of Defendant and without compensation at the applicable federal overtime rates.

      c.    Failing to pay employees the full amount of overtime compensation earned.

60.    As a result of Defendant's violations of the FLSA, Plaintiff and those similarly-situated to them suffered damages, including their lost overtime pay, for which they should be awarded compensatory damages, liquidated damages, and attorney's fees and other reasonable litigation expenses.

## COUNT II – VIOLATION OF KY. REV. STAT. ANN. §§ 337.275, ET SEQ BY NONPAYMENT OF WAGES.

61.    All previous paragraphs are incorporated as though fully set forth herein.

62.    Plaintiff brings this claim on behalf of all members of the proposed Rule 23 Class.

63.    Kentucky state law requires that covered employees be compensated for every hour worked in a workweek. See KY. REV. STAT. ANN. §§ 337.275, *et seq.*.

64.    KY. REV. STAT. ANN. § 337.285 requires that employees receive overtime compensation "not less than one and one-half (1-1/2) times" the employee's regular rate of pay for all hours worked over forty in one workweek.

65.    During all times material to this complaint, Defendants were each a covered employer required to comply with the Kentucky Wage Statutes.

66.    During all times material to this complaint Plaintiffs and the Rule 23 Class were covered employees entitled to the protections of the KWHA.

67.    Plaintiff and the Rule 23 Class he seeks to represent are not exempt from receiving the KWHA's overtime benefits because they do not fall within any of the exemptions set forth therein. See KY. REV. STAT. ANN. § 337.285(2).

68.    Defendants have violated the KWHA with respect to Plaintiff and the Rule 23 Class by, inter alia, failing to compensate them for all hours worked at their normal hourly rate (for time worked under forty hours per week) and at one and one-half their "regular rate" for all hours worked in a workweek in excess of forty hours.

69.    In violating the KWHA, Defendants acted willfully and with reckless disregard of clearly applicable provisions of the KWHA.

70.    Pursuant to the KWHA, including KY. REV. STAT. ANN. § 337.385, Defendants, because they failed to pay employees the required amount of wages and overtime at the statutory rate, must reimburse the employees not only for the unpaid wages, but also for liquidated damages in an amount equal to the amount of unpaid wages.

71.    Pursuant to the KWHA, including KY. REV. STAT. ANN. § 337.385, Plaintiff and the Rule 23 Class are entitled to reimbursement of the litigation costs and attorney's fees expended if they are successful in prosecuting an action for unpaid wages.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays that the Court:

A.      Issue process and bring Defendants before the Court;

B.      Authorize notice to issue to members of the proposed collective action and permitting similarly-situated persons a reasonable opportunity to join this litigation with respect to claims under the FLSA;

C.      Certify a class of similarly-situated employees whose rights were violated by Defendants under Kentucky law, and grant relief available under Kentucky law, including unpaid wages, liquidated damages, and attorney's fees and other litigation expenses, to the class;

D.      Empanel a jury for the trial of all issues of fact;

E.      Enter a judgment awarding Plaintiff and similarly-situated persons joining this litigation damages from Defendant, including compensation for unpaid work time, compensation for unpaid overtime pay, interest, and liquidated or exemplary damages, in amounts to be proven at trial;

F.      Award Plaintiff and similarly-situated persons joining this litigation all costs of litigation, including expert fees and attorneys' fees;

G.      Grant Plaintiff and similarly-situated persons joining this litigation all costs of litigation and such other further and/or general relief, legal and/or equitable relief, to which they are entitled or which the Court otherwise deems appropriate.

Respectfully submitted,

/s/ Mark N. Foster
Mark N. Foster
Law Office of Mark N. Foster, PLLC
P.O. Box 869
Madisonville, KY 42431
(270) 213-1303
Mfoster@MarkNFoster.com

John R. Kleinschmidt, III
THE LAW OFFICES OF JOHN R.
KLEINSCHMIDT III, PLLC
P.O. Box 1746
Lexington, KY 40588
(859) 866-3097
john@employmentlawky.com


*Counsel for Plaintiff*